**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 21-30E |
| | ) |
| SEAN HVIZDZAK | ) |

**MEMORANDUM OPINION**

I. **BACKGROUND**

Defendant Sean Hvizdzak and his co-defendant, Shane Hvizdzak, are charged in a 65-count Indictment with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; and money laundering, in violation of 18 U.S.C. §§ 1957 and 2. (Docket No. 1). Specifically, Sean Hvizdzak is charged with one count of conspiracy to commit wire fraud (Count 1), twenty-six counts of wire fraud (Counts 5-7, 9-12, 22, 23, 25-32, 38 and 41-48), and four counts of money laundering (Counts 54, 55, 58 and 59). (*See id.*). Jury selection and trial are scheduled to commence on October 20, 2025. (Docket No. 173).

Presently before the Court is Defendant Sean Hvizdzak's Omnibus Motion in Limine, consisting of nine in limine motions ("MIL"), to which the Government has responded. (Docket Nos. 187, 193). After considering the parties' respective positions, Defendant's MILs will be denied, denied without prejudice, and/or denied as moot.

II. **Legal Standard – Motions in Limine**

A district court has 'wide discretion in determining the admissibility of evidence under the Federal Rules." *United States v. Abel*, 469 U.S. 45, 54 (1984). To that end, a district court's ruling on a motion in limine is "subject to change when the case unfolds, particularly if actual testimony differs from what was contained in the movant's proffer. Indeed, even if nothing unexpected

1

happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Luce v. United States*, 469 U.S. 38, 41-42 (1984). Further, "[a] trial court considering a motion in limine may reserve judgment until trial in order to place the motion in the appropriate factual context." *United States v. Tartaglione*, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017) (citation omitted).

### A. MIL #1 – Any Stipulation Made in the Underlying SEC Case

In addition to this pending criminal case, Defendant notes that there is a parallel civil action which was initiated by the Securities and Exchange Commission ("SEC") over a year before the Indictment in this case. (Docket No. 187 at 1). As part of the SEC case, Defendant stipulated to the issuance of a preliminary injunction, "foregoing the opportunity to contest an asset freeze at an initial evidentiary hearing in exchange for certain protections and additional time to provide court-ordered information (the 'Stipulation')." (*Id.*). Defendant seeks to preclude the Government from introducing the Stipulation or any similar stipulation made in the SEC proceeding at trial in this case. (*Id.* at 1-3). The Government responds that it does not intend to introduce any stipulation in the SEC proceeding at the trial here.[1] (Docket No. 193 at 3). Accordingly, Defendant's MIL to exclude any stipulation made in the SEC case is DENIED AS MOOT.

### B. MIL #2 – Evidence, Testimony, and Arguments Concerning the September 2020 Deed Transfer From Shane Hvizdzak to a Trust

Defendant seeks to exclude evidence, testimony, and arguments related to the September 2020 deed transfer from Shane Hvizdzak to a trust, contending that it is both irrelevant to the

---

[1] The Government submits in its Response that the defense should likewise be precluded from raising at trial matters arising in the SEC proceeding "to avoid confusing the jury and unfairly disparaging the investigation." (Docket No. 193 at 3). Given Defendant's request to exclude reference to any stipulation in the SEC case, and the fact that he did not file any Reply contesting the Government's related request to preclude the defense from raising any matters from the SEC case, the Government's request is granted.

2

charged conduct and unfairly prejudicial. (Docket No. 187 at 4). In advancing this argument, Defendant references ¶ 44 of the Indictment, which alleges that it was part of the conspiracy that in and around September 2020, Defendant Shane Hvizdzak and/or Defendant Sean Hvizdzak transferred an asset from an entity owned by Shane Hvizdzak to a family trust in the name of Shane Hvizdzak. (Docket No. 1, ¶ 44). In Defendant's estimation, irrespective of ¶ 44, the charged conspiracy ended when the FBI conducted a search at Shane Hvizdzak's home on or about June 17, 2020. (Docket No. 187 at 4). Therefore, Defendant maintains that the factual assertions in ¶ 44 actually are Rule 404(b) evidence cloaked as part of the Indictment. (*Id.*). However, given that ¶ 44 does not deal with investors or their funds, Defendant contends that any evidence related thereto is irrelevant and prejudicial. (*Id.*). As support, Defendant points to proceedings in the SEC case, which he says demonstrate that the property at issue was transferred due to an apparent misunderstanding by Shane Hvizdzak and, when discovered, was quickly reversed by the parties in the SEC case with the Court's assistance. (*Id.* at 5). According to Defendant, to suggest to the jury that his involvement with the deed transfer, which he says only involved preparing some paperwork for the transaction, was part of the criminal conspiracy is "flat wrong" and would be misleading and prejudicial. (*Id.*).

Contrary to Defendant's position, the Court finds that evidence related to the September 2020 deed transfer from Shane Hvizdzak to a trust should not be excluded at trial. As an initial matter, to the extent that Defendant contends that the allegations in ¶ 44 of the Indictment are improper or somehow prejudice him, he could have filed a motion to strike what he apparently now claims is surplusage from the Indictment, but he failed to do so. *See* Fed. R. Crim. P. 7(d) ("Upon the defendant's motion, the court may strike surplusage from the indictment or information."). Rule 7(d) "introduces a means of protecting the defendant against immaterial or

3

irrelevant allegations in an indictment or information, which may, however, be prejudicial." *United States v. Hedgepeth*, 434 F.3d 609, 612 (3d Cir. 2006) (quoting Fed. R. Crim. P. 7(d) Advisory Comm. Note). The *Hedgepeth* Court held that, upon a defendant's motion, "the court may strike surplusage from the indictment or information when it is both irrelevant (or immaterial) and prejudicial."[2] *Id.* at 612. Given that Defendant did not move under Rule 7(d), ¶ 44 is part of the manner and means section of the conspiracy alleged in Count One of the Indictment and falls within the time period of the alleged conspiracy, that is, from in and around March 2019 until in and around July 2021. (*See* Docket No. 1, ¶ 21). In the Court's estimation, evidence related to ¶ 44 is relevant and admissible to the conspiracy allegations, considering the Government's representation in its Response that costs for the property which was the subject of the deed transfer alleged in ¶ 44 were paid for, in part, with investor funds. (Docket No. 193 at 4).

As noted in the Government's Response, to the extent Defendant claims that the September 2020 deed transfer was a mistake which was rectified, that claim appears to be a defense to the allegation in ¶ 44, which does not warrant excluding evidence related to the deed transfer. As the Government also points out, Defendant will have an opportunity to present to the jury his explanation of what occurred relative to the September 2020 deed transfer. However, if that explanation involves referring to Shane Hvizdzak's supposed misunderstanding that was reversed when discovered in the SEC proceeding, (*see* Docket No. 187 at 5), Defendant is reminded that he moved to exclude any stipulation made in the SEC case, and he did not contest the Government's related request to preclude the defense from raising matters from the SEC case. *See supra* at 2.

---

[2] Considering this restrictive standard, motions to strike surplusage are rarely granted. *Hedgepeth*, 434 F.3d at 611 (citations omitted).

Given the foregoing, Defendant's MIL to exclude evidence, testimony, and arguments related to the September 2020 deed transfer from Shane Hvizdzak to a trust is DENIED.

C. **MIL #3 – Evidence, Testimony, and Arguments Concerning Any Event that Post-date the Account Freeze and Raid on or about June 17, 2020**

Defendant seeks to exclude evidence, testimony, and arguments pertaining to other allegations in the Indictment, that is, ¶ 21 (alleging that the conspiracy continued until in and around July 2021) and ¶ 45 (alleging that Defendants failed to provide complete and accurate information and/or records regarding digital currency transactions to the Fund's Administrator A through August 2021). (Docket No. 187 at 5). According to Defendant, any such evidence is irrelevant because it concerns conduct that occurred after mid-June 2020 when the SEC complaint was made public and the FBI raid occurred, which he maintains is "undoubtedly" the end of the charged conspiracy. (*Id.* at 5-6).

The Court finds that evidence, testimony, and arguments concerning any event that post-date the account freeze and FBI search on June 17, 2020 should not be excluded at trial. As discussed above, to the extent that Defendant now claims the allegations in ¶¶ 21 and 45 of the Indictment (or some portion of them) are improper or somehow prejudice him, he could have filed a motion to strike those allegations from the Indictment, but he failed to do so. *See* Fed. R. Crim. P. 7(d).

In any event, the Government represents that it does not anticipate presenting voluminous evidence related to events that occurred after the FBI executed a search warrant at Shane Hvizdzak's residence on June 17, 2020, but it likely will question certain witnesses regarding things that did not occur, and statements subsequently made by Defendants indicating that investor money was appropriately invested. (Docket No. 193 at 6). For instance, as relevant to ¶ 45 of the Indictment, if representatives of the Fund's Administrator A testify at trial, the Government intends

5

to question them about whether Defendants maintained contact with them after mid-June 2020. (*Id.*). As the Government explains, such questioning is relevant because, if everything with the Fund was fine, one would presume that Defendants would have maintained contact with the Fund's Administrator to ensure that investor interests were being protected, whereas the lack of contact could cause one to infer that problems existed. (*Id.*). The Court agrees that the evidence is relevant for such purpose, and Defendant's MIL to exclude evidence, testimony, and arguments concerning events that post-date the account freeze and search warrant execution on June 17, 2020 is DENIED.

    **D. MIL #4 – Evidence, Testimony, and Arguments Concerning Deeds Conveyed in the Spring of 2020 and Allegedly Backdated from May to March by Sean Hvizdzak**

Defendant seeks to exclude evidence, testimony, and arguments related to deeds conveyed in the spring of 2020 and allegedly backdated from May to March by Defendant. (Docket No. 187 at 6). In advancing this argument, Defendant references ¶ 43 of the Indictment, which alleges that it was part of the conspiracy that in and around May 2020, Defendant Shane Hvizdzak and/or Defendant Sean Hvizdzak transferred certain jointly owned assets from Shane Hvizdzak and Sean Hvizdzak to Sean Hvizdzak individually. (Docket No. 1, ¶ 43). According to Defendant, this transfer is not alleged to involve investors' money or property traceable to any such money. (*Id.* at 7). Defendant maintains that the factual assertions in ¶ 43 are really Rule 404(b) evidence even though it is part of the Indictment. (*Id.*). Accordingly, Defendant argues that evidence related to the deed transfers should be excluded because it is irrelevant and prejudicial. (*Id.*). Defendant also contends that evidence that the deeds were back dated should be excluded for the same reasons.

The Court finds that evidence, testimony, and arguments concerning deeds conveyed in the spring of 2020 should not be excluded at trial. As discussed above, to the extent that Defendant now claims the allegations in ¶ 43 of the Indictment are improper or somehow prejudice him, he

could have filed a motion to strike those allegations from the Indictment, but he failed to do so. *See* Fed. R. Crim. P. 7(d). As such, those allegations remain in the Indictment as part of the charged conspiracy, and the Court does not view the allegations concerning the deed transfer to be Rule 404(b) evidence, despite Defendant's assertion to the contrary.

Moving on, the Court finds that evidence related to ¶ 43 is relevant and admissible as to the conspiracy allegations, considering the Government's representation in its Response that one of the transferred properties was listed on various documents as the address of record for the High Street Capital Fund, which is central to the alleged fraud scheme, and the other transferred property is listed as the address of record for Hvizdzak Capital Management's CNB bank account, through which certain investor funds were funneled. (Docket No. 193 at 7). The Government submits that it intends to introduce the deed transfers as evidence of concealment of Shane Hvizdzak's ties to the property central to the alleged fraud in an effort to distance himself from the fraud and to shield the properties from possible future legal action. (*Id.*). Based on the information presently available, the Court concludes that this evidence related to the deed transfers is relevant to the conspiracy as alleged in the Indictment.

As for Defendant's argument to exclude evidence that the deeds transferring the properties were back dated from May 2020 to March 2020, the Government responds that such evidence is admissible as consciousness of guilt to show that Defendants were attempting to distance the transfers from the alleged fraud scheme. (Docket No. 193 at 8). Based on the information presently available, the Court agrees with the Government. Furthermore, the Government correctly notes that Defendant will have the opportunity to present his explanation to the jury concerning the supposed transfer of the properties for estate planning purposes and that the back

7

dating resulted because of closures associated with the Covid-19 pandemic. (*See* Docket No. 187 at 7).

In summary, the Court finds that the challenged evidence is relevant to the charged conspiracy, and its admission will not prejudice Defendant. Accordingly, Defendant's MIL to exclude evidence, testimony, and arguments concerning deeds conveyed in the spring of 2020 is DENIED.

### E. MIL #5 – Report of Interview of Daniel O'Connor

As part of the investigation in this case, the Government interviewed Daniel O'Connor, an Assurance Partner with Richey May & Co., who worked with individuals at Richey May who in turn worked with the Defendants. (Docket No. 187 at 8). According to Defendant, Mr. O'Connor did not work or communicate directly with either Defendant. (*Id.*). A report summarizing Mr. O'Connor's interview details discussions he had with other individuals, including Kevin Christner. (*Id.*). Defendant submits that discovery shows Mr. Christner interacted only with Shane Hvizdzak, not him, and that Shane Hvizdzak, not him, sent Mr. Christner what is alleged to be a fraudulent audit on Richey May letterhead. (*Id.* at 8-9). Contrary to other discovery, the report of Mr. O'Connor's interview lists Sean Hvizdzak as having provided the materials to Mr. Christner. (*Id.* at 9.). Defendant says that this is a typographical error, and he seeks to preclude this apparent inaccuracy from being presented at trial via introduction of the report or otherwise. (*Id.*).

The Government responds that it does not intend to introduce the report of Mr. O'Connor's interview that sets forth statements which would be inadmissible hearsay. (Docket No. 193 at 8). If Mr. O'Connor testifies at trial, the Government understands that he may not convey hearsay statements to the jury, absent an applicable exception to the hearsay rules. (*Id.*). Furthermore, the

8

Government does not intend to introduce testimony from Mr. O'Connor that is factually inaccurate. (*Id.*). Given the Government's response, Defendant's MIL to exclude the report of Mr. O'Connor's interview is DENIED AS MOOT.

### F. MIL #6 – Sean Hvizdzak's Texts With Morgan O'Brien Related to Calls with Mike Snyder About a Potential Broker-Dealer Relationship

Defendant submits that he and his co-defendant considered establishing a relationship with Mike Snyder, whereby Mr. Snyder would raise capital for the Fund in exchange for certain fees. (Docket No. 187 at 10). The potential relationship was promoted in part by Morgan O'Brien, the Fund's Vice President of Business Development, who served as a liaison between Defendants and Mr. Snyder while the matter was being discussed. (*Id.*). During group calls concerning the potential relationship, Defendant and Mr. O'Brien engaged in text message conversations about the on-going calls. (*Id.*). Defendant argues that the text messages should be excluded as irrelevant because a potential referral-for-fees relationship with the Fund has no bearing on the charges, particularly given that the relationship with Mr. Snyder never materialized. (*Id.*). He also maintains that the text messages are likely to cause confusion for the jury and should be excluded on that basis, as well. (*Id.*).

Defendant has not identified the specific text messages with Mr. O'Brien he seeks to exclude. (See Docket No. 193 at 10). Absent that information, the Court is unable to evaluate whether the text messages should be admitted or excluded, thus Defendant's MIL concerning his texts with Mr. O'Brien related to calls with Mr. Snyder is DENIED WITHOUT PREJUDICE. *See Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013) (explaining that "the court may deny a motion in limine when it lacks the necessary specificity with respect to the evidence to be excluded").

G. **MIL #7 – Any Emails with CNB Containing Information Written in Part by Both Defendants**

Defendant seeks to exclude emails with CNB that were sent from his email address, which supposedly contain information written in part by him and in part by Shane Hvizdzak. (Docket No. 187 at 11). Defendant maintains that these emails will unfairly prejudice him and confuse the jury because it may attribute the portions written by Shane Hvizdzak to him. (*Id.*).

The Government responds that the emails with CNB are admissible as evidence of the conspiracy and are not unfairly prejudicial. (Docket No. 193 at 10-11). As the Government explains, the evidence shows that a particular email in question was drafted by Defendant, and there is no basis to exclude it. (*Id.* at 10). Even if an email was drafted by both Defendants, the Government submits that it would be admissible as jointly undertaken conduct by Defendants, which show their joint knowledge of the activity in an account central to the alleged fraud scheme. (*Id.*).

Based upon the present record, the Court finds that exclusion of the challenged emails is unwarranted. Defendants are charged with conspiracy to commit wire fraud. Related to the conspiracy charge, the jury will be instructed that the acts or statements of any conspiracy member are treated as the acts or statements of all members of the conspiracy, if the acts or statements were performed or spoken during the existence of the conspiracy and to further its objectives; that the jury may consider as evidence against Defendants any acts done or statements made by conspiracy members during the existence of the conspiracy and to further its objectives; and that the jury may consider those acts and statements even if they were done and made in Defendants' absence and without their knowledge. (*See* 3d Cir. Model Crim. Jury Instructions, § 6.18.371K). Accordingly, even if certain portions of a particular email were written by Shane Hvizdzak, that evidence is admissible as to Defendant as evidence of jointly undertaken activity. If it is established that any

10

particular email causes concern for prejudice to Defendant, the Court can minimize any such prejudice by issuing a limiting instruction. Accordingly, Defendant's MIL to exclude emails with CNB containing information written in part by both Defendants is DENIED.

### H. **MIL #8 – Evidence Regarding Sean Hvizdzak's Temporary Law License Suspension**

In response to Defendant's request to exclude all evidence and testimony that his law license has been temporarily suspended because of the charges against him in this case, the Government responds that it does not intend to introduce any such evidence or testimony. (*See* Docket Nos. 187 at 11-12; 93 at 11). Accordingly, Defendant's MIL concerning the temporary suspension of his law license is DENIED AS MOOT.

### I. **MIL #9 – Evidence/Testimony Referencing Defendant's Use of Phrase "Jew Crew"**

According to Defendant, "[i]n a few communications" he sent, he refers to a certain group of individuals that Shane Hvizdzak interacted with as the "Jew Crew," referencing the fact that these individuals are Jewish. (Docket No. 187 at 12). Given the pejorative nature of the phrase "Jew Crew," Defendant seeks to exclude evidence and testimony that contains, or includes reference to, his use of the phrase (or he requests to redact it), contending that it has no direct bearing on, or relationship to, the charged conduct and would only serve to prejudice the jury. (*Id.*).

The Government responds that the phrase is probative because it identifies individuals to whom Defendants sent investor money. (Docket No. 193 at 12). According to the Government, many of these individuals were initial investors who were later made whole with the money of later investors. (*Id.*). The Government maintains that eliminating the phrase will hamper the jury's

11

consideration of the evidence by leaving a void in the conversation between Defendants.[3]  (*Id.*). Furthermore, the Government submits that any prejudicial impact of the phrase is minimal at best because Defendant says that he only used the phrase a few times.  (*Id.*).

The Court finds that exclusion or redaction of the phrase "Jew Crew" is unwarranted.  First, given the Government's representation, it appears that conversations between Defendants concerning individuals they referred to as the "Jew Crew" would be relevant to the jury's consideration of where certain investor money was channeled.[4]

Further, there is minimal risk of prejudice to Defendant.  As a sister court has observed, "[c]ourts only grant motions to redact racial epithets when they are concerned that the use of such epithets would lead to jury prejudice against the defendant, including a perception by jurors that the defendant is a racist."  *United States v. Strickland*, No. 2:21-cr-00311, 2024 WL 2873931, at *5 (D.N.J. June 7, 2024) (citing *United States v. Giampa*, 904 F. Supp. 235, 296 (D.N.J. 1995) (noting the court had ordered the removal of all racial epithets "that were not descriptive in nature and alleged by the Government to be necessary to identify the person being referred to in the transcripts" based on defendants' argument that such removal was required "to insure the verdict rendered by the jury was based on a determination of their criminal culpability rather than whether they were racists"); *United States v. Price*, 13 F.3d 711, 720 (3d Cir. 1994) (refusing to redact transcript despite defendant using n-word to refer to rival gang, based on conclusion the jury was

---

[3]  On this point, while Rule 403 states that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice," Fed. R. Evid. 403, the rule "does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone."  *United States v. Cross*, 308 F.3d 308, 325 (3d Cir. 2002) (citation omitted).

[4]  The Court bases its ruling on the information presently available.  The parties are reminded that a district court's ruling on a motion in limine is "subject to change when the case unfolds, particularly if actual testimony differs from what was contained in the movant's proffer.  Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling."  *Luce*, 469 U.S. at 41-42.

not prejudiced against defendant by use of the word)). Here, there appears to be minimal concern that the jury would perceive Defendant to be bigoted or prejudiced against any religious or ethnic group because, by his own representation, he only used the phrase "Jew Crew" "[i]n a few communications." (Docket No. 187 at 12). Moreover, if any concern that the jury may be offended or prejudiced by the phrase "Jew Crew" remains, the Court can minimize any prejudice to Defendant by issuing a cautionary instruction. *See United States v. Colbert*, No. 08-411, 2011 WL 3360112, at *12 (W.D. Pa. Aug. 3, 2011) (observing that "any potential prejudice that possibly could result from the use of the offensive language can be minimized through . . . cautionary instructions during trial"). Accordingly, Defendant's MIL concerning his use of the phrase "Jew Crew" is DENIED.

### III. CONCLUSION

For the reasons explained above, Defendant Sean Hvizdzak's Omnibus Motion in Limine, (Docket No. 187), is DENIED, DENIED WITHOUT PREJUDICE, and/or DENIED AS MOOT.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Date: September 25, 2025

cc/ecf: All counsel of record